```
          IN THE UNITED STATES DISTRICT COURT FOR
          THE DISTRICT OF MARYLAND, NORTHERN DIVISION

PHILIP M. PRIDGEN,              *

     Plaintiff,                 *

        v.                      *    CIVIL NO.: WDQ-08-2826

DEPARTMENT OF PUBLIC WORKS/     *
BUREAU OF HIGHWAYS, et al.
                                *
     Defendants.
                                *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

Philip M. Pridgen, *pro se*, sued the Baltimore County Department of Public Works ("DPW") and others[1] for employment discrimination. Pending are the Defendants' and Pridgen's motions for summary judgment and Pridgen's motion to appoint counsel, to order depositions, and for a continuance.[2] For the following reasons, Pridgen's motions will be denied, and the Defendants' motion for summary judgment will be granted.

I. Background

Pridgen is an African-American who was hired by the Bureau of Highways, within the DPW. Am. Compl. ¶ 6. Before his first day

---

[1] Edward C. Adams, Jr. (Director of the DPW), Robert Burgess (Chief of the Bureau of Highways), Tom Shumaker, Rick Richards, George Gay, Theresa S. Hill, Randy Shifflett, and James T. Smith (Baltimore County Executive).

[2] Pridgen also asks that this Court "allow witnesses and exa[]minations to be placed before [a] jury of citizen peers, to determine the facts." Pl.'s Mot. Summ J. 3.

of work on November 13, 2007, Pridgen was required to undergo a physical examination and complete a medical questionnaire.[3]  Def.'s Mot. 1.  Pridgen alleges that, during that exam, he advised the medical examiner that he had past injuries.  Am. Compl. ¶ 6.[4]  Pridgen, who is also blind in his left eye, has filed six Workers' Compensation claims in the past four years.  *See* Def.'s Mot. Exs. 3 & 5.

Pridgen alleges that during his employment at Shop #6[5] there was a "[p]attern of racial abuse."  Am. Compl. ¶ 6.  An African-American female was harassed and forced to quit, and an African-American male was fired after "verbally defending himself from others because he was engaged to marry a Cau[ca]sian female."  *Id.*

Pridgen reported the "racial ten[s]ion" at Shop #6 to his superiors in anonymous faxes.  Pl.'s Mot. Summ. J. Ex. 1 at 2a ["EEOC Charge"].  He was "ostracized" by his crew chiefs when they discovered he had written the faxes.  *Id.*

---

[3]  The medical questionnaire asked the respondent to indicate whether he had ever had the listed conditions.  Def.'s Mot. Ex. 3.  Only the box for "kidney trouble" is checked.  *Id*.  On this form, Pridgen signed his name, indicating that he had "truthfully answered the above questions."  *Id*.  Pridgen cannot remember if he or the medical examiner completed this form.  Compl. ¶ 4.

[4]  The Defendants allege that Pridgen's medical questionnaire only indicated his history of kidney disease.  Def.'s Mot. 2.

[5]  Pridgen refers to his division at the Bureau of Highways as "Shop #6."

On December 5, 2007, Pridgen was injured at work. Def.'s Mot. 2. When Baltimore County subsequently filed a Workers' Compensation claim, it received information about Pridgen's previous claims. *Id*. Pridgen was fired on June 11, 2008. Am. Compl. ¶ 4. The Defendants allege that he was fired because he gave false information on his medical questionnaire. Def.'s Mot. 2.[6] Pridgen alleges that he was fired "on the basis of [his] disability" and in retaliation for reporting discrimination at Shop #6. Am. Compl. ¶ 6; Pl.'s Mot. Summ. J. 1.

On July 2, 2008, Pridgen filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"). Am. Compl. ¶ 9, Ex. 2. On the EEOC form, Pridgen checked the box for "disability"--but not "race" or "color"--discrimination. EEOC Charge 2. He also wrote in "racial disparity" as a reason for his claim. *Id*. Pridgen's charge alleged several incidents of racial discrimination against himself and his co-workers at Shop #6.[7] *Id*.

---

[6] Chief of the Bureau of Highways for Baltimore County, Robert T. Burgess, signed Pridgen's Notice of Termination on June 11, 2008. Def.'s Mot. Ex. 6. That notice cites the reason for his termination under Rule 15, Regulation 15.04 O-5: "'[t]hat the employee has willfully made a false official statement, falsified any record, time sheet, or report, or defrauded the county in any way.' The employee falsified medical documentation." *Id*.

[7] Pridgen alleges that he was: (1) "ostracized, by [s]everal crew chiefs[] slandering my name . . . [because] I was the person [re]sponsible for letters being sent to the office of Fair Practice[] (Adrian Jones) concerning the racial ten[s]ion"; (2) "written up by my supervisor for falsely accusing my co-worker 'Joe' of acting racist"; (3) "informed [by] another co-worker . .

3

at 2-2b.  The EEOC issued a right to sue letter on July 25, 2008. Am. Compl. ¶ 9, Ex. 2.

On October 24, 2008, Pridgen filed this suit.  Paper No. 1. His complaint alleges a "pattern of racial abuse" at Shop #6 and re-states several incidents of discrimination contained in his EEOC charge.  Am. Compl. ¶ 6.  Pridgen requests an injunction to "[c]ease discriminatory attitudes and verbal[ly] abusive langu[a]ge to employees."  *Id*. ¶ 10.

Pridgen has requested appointment of counsel.  Paper Nos. 16 & 24.  On May 12, 2009, the Defendants filed a motion for summary judgment.  Paper No. 22.  On June 22, 2009, Pridgen filed a "Supplemental Motion for Summary Judgment," asking the Court to order depositions and appoint counsel.  Paper No. 32. On June 24, 2009, the Court granted Pridgen's motion for a continuance to depose Baltimore County witnesses.  Paper No. 34.

On October 15, 2009, after being denied an extension of time, Paper No. 41, Pridgen filed a motion for summary judgment.  Paper No. 42.  On November 2, 2009, Pridgen filed motions asking the Court to order depositions and appoint counsel and also requesting a continuance.  Paper Nos. 46 & 48.

---

. that crew chief R. Shifflett[] stated, I'm going to get [h]im, meaning terminate me[] because I'm not [in]jured."  EEOC Charge 2a-2b.  His complaint also alleges that two of his African-American co-workers were wrongfully fired and other employees drew swastikas and stated "this is what we're about at Shop #6."  *Id.*

II.  Analysis

    A.    Standard of Review

        1.    Exhaustion of Administrative Remedies and Rule 12(h)(3)

The failure to exhaust administrative remedies deprives this Court of subject matter jurisdiction over a Title VII or ADA claim.  *See Jones v. Calvert Group Limited*, 551 F.3d 297, 300 (4th Cir. 2009); *Bell v. Manugistics Group, Inc.*, No. AW-06-941, 2006 WL 1494560, at *1 (May 26, 2006); *Talbot v. U.S. Foodservice, Inc.*, 191 F. Supp. 2d 637, 639 (D. Md. 2002).  Under Rule 12(h)(3), "[i]f the court determines at any time that it lacks subject matter jurisdiction, the court *must* dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added).

        2.    Rule 56(c)

Under Rule 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A dispute about a material

5

fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (*quoting Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

B.   The Summary Judgment Motions

1.   Title VII Claim

a.   Subject Matter Jurisdiction

The Defendants argue that because Pridgen's "EEOC charge mentioned only disability discrimination" he did not exhaust his administrative remedies for the Title VII claims.  Def.'s Mot. 1.[8] Pridgen must show that he has filed a timely[9] charge of

---

[8]   Pridgen and the Defendants have filed copies of the EEOC Charge.  The copy attached to the Defendants' motion lacks two pages which describe the alleged discrimination.  The court will refer to these pages as "2a" and "2b" in Pridgen's exhibit; these pages are attached to the Defendants' reply.  EEOC Charge 2a-2b; Def.'s Reply Ex. 1.

[9]   *See* 42 U.S.C.A. § 2000e-5(e)(1)("A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . [unless]

discrimination with the EEOC. *Jones*, 551 F.3d at 300.[10] "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996).

Because EEOC claims are often made by non-lawyers, "Title VII does not require procedural exactness," *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988), and "EEOC charges must be construed with utmost liberality [when] they are made by those unschooled in the technicalities of formal pleading." *Id.* (*quoting Kaplan v. Int'l Alliance of Theatrical & Stage Employees*, 525 F.2d 1354, 1359 (9th Cir. 1975)).

Pridgen's failure to check all the correct boxes on the EEOC form does not mean that he has not exhausted his administrative remedies. *See Parkinson v. Anne Arundel Medical Center, Inc.*, 214 F.Supp. 2d 511, 517 n.9 (D. Md. 2002). Pages 2a and 2b of Pridgen's EEOC charge sufficiently allege a Title VII claim.

---

the person aggrieved has initially instituted proceedings with a State or local agency" and then within 300 days of the alleged unlawful practice.).

[10] "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge circumvents the EEOC's investigatory and conciliatory role." *Riley v. Tech. & Mgmt. Servs., Inc.*, 872 F. Supp. 1454, 1459 (D. Md. 1995).

7

Accordingly, he has exhausted his administrative remedies, and this Court has jurisdiction over his Title VII claim.

                    b.    Retaliation

The Court construes *pro se* civil rights complaints liberally. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), *cert. denied*, 439 U.S. 970 (1978). They are held to a less stringent standard than those drafted by attorneys. *Id*.

Title VII makes it unlawful for an employer to retaliate against an employee because he has opposed a practice made unlawful under Title VII. 42 U.S.C.A. § 2000e-3(a). Pridgen alleges[11] that the Defendants fired him in retaliation for sending letters and making complaints about racial tension at Shop #6. Because Pridgen has presented no direct evidence of retaliation, he must establish his claim by circumstantial evidence.[12]

Pridgen must state a prima facie case of retaliation[13] by showing that (1) he engaged in protected activity, (2) his

---

[11] Many allegations in the complaint are stated more completely in Pridgen's EEOC charge, which was attached to, and incorporated in, the complaint; the Court will consider both documents.

[12] A plaintiff may establish a prima facie case of retaliation by direct or circumstantial evidence. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003); *Worden v. SunTrust Banks, Inc.*, 549 F.3d 334, 342 (4th Cir. 2008).

[13] The burden of showing a *prima facie* case is not onerous, *Texas Dept. of Cmty. Affairs v. Burdine*, 428 U.S. 248, 253 (1981), and is "relatively easy," *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

employer took a materially adverse action against him, and (3) there is a causal connection between the protected activity and the adverse action. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Williams*, 370 F.3d at 430; *King v. Rumsfeld*, 328 F.3d 145, 150-51 (4th Cir. 2003). Because the Defendants have not addressed Pridgen's *prima facie* case of retaliation, Pridgen has satisfied this initial burden.

The Defendants must present a legitimate, nondiscriminatory reason for Pridgen's termination. *See Reeves*, 530 U.S. at 142 (*quoting Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). The Defendants contend that they fired Pridgen because of his incomplete responses to the medical questionnaire-- he listed only "kidney trouble" and not his other past injuries. Def.'s Reply 2. Pridgen's Notice of Termination is consistent, stating that he was dismissed for "falsified medical documentation." Def.'s Mot. Ex. 6.

Because the Defendants have presented a nondiscriminatory reason for Pridgen's termination, he must show that the proffered reason was a pretext. *Reeves*, 530 U.S. at 143. When an employee establishes a prima facie case and presents evidence that the employer's nondiscriminatory reasons were false, the employee is not always required to introduce additional evidence of pretext to sustain a favorable jury verdict. *E.E.O.C. v. Sears Roebuck and Co.*, 243 F.3d 846, 854 (4th Cir. 2001)

(*quoting Reeve*s, 530 U.S. at 147)).  But, Pridgen has "the ultimate burden of persuading the court that [he] has been the victim of intentional discrimination."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Pridgen argues that the stated reason for his termination is false because he told the medical examiner about his past conditions.  He further contends that he cannot remember whether he or the examiner completed the questionnaire; thus, the allegedly "false" statements may not be his.  Pridgen does not argue that the questionnaire was complete or accurate.

When an employer fires an employee "under the mistaken but honest impression that the employee violated a work rule," it is not liable for discrimination.  *Gibson v. Fluor Daniel Servs. Corp.*, 281 Fed. Appx. 177, 179 (4th Cir. 2008)(*quoting Damon v. Fleming Supermarkets*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999)).  Here, Pridgen's medical questionnaire did not reflect the injuries disclosed in his Workers' Compensation claims.  This inconsistency was discovered on June 9, 2008; Burgess fired Pridgen the next day for falsified medical records.  There is no evidence that Burgess, even if incorrect, did not honestly believe that Pridgen was responsible for the omissions on his medical questionnaire.

To demonstrate pretext, Pridgen needed to show that the decision maker, Burgess, knew about Pridgen's injuries before receiving the Workers' Compensation claims. *See Koski v. Standex Int'l Corp.*, 307 F.3d 672 (7th Cir. 2002)(plaintiff must show that the decision maker gave a false reason for his decision or evaluated him based upon discriminatory criteria). Pridgen failed to provide this evidence.  Thus, the Defendants' stated reason for firing Pridgen was not false, and Pridgen has presented no other evidence of pretext.  Summary judgment will be granted to the Defendants on Pridgen's Title VII claim.

    2.   ADA Claim

Pridgen alleges that the Defendants fired him because of his poor vision and "past injuries" in violation of the ADA. Am. Compl. 2-3; EEOC Charge 2.  It is undisputed that Pridgen filed a timely charge of disability discrimination with the EEOC and has exhausted his administrative remedies for this claim. *See* Am. Compl. Ex. 1 at 2-3.

Under the ADA, "no covered entity[14] shall discriminate against a qualified individual[15] on the basis of disability in .

---

[14] "Covered entity" means "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C.A. § 12112(2).  The Bureau of Highways is a covered entity.

[15] A "qualified individual" is one who "with or without reasonable accommodation, can perform the essential functions of

11

. . discharge of employees . . . or other terms, conditions, and privileges of employment." 42 U.S.C.A. § 12112(a). A prima facie case of discriminatory discharge requires a showing that (1) the plaintiff was disabled;[16] (2) he was discharged; (3) he was performing his job at a level that met employer's legitimate expectations at the time of discharge; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. *Ennis v. Nat'l Ass'n of Bus. and Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995)(*quoting Burdine*, 428 U.S. at 253).

Here, it is undisputed that (1) Pridgen has no vision in his left eye and has filed six Workers' Compensation claims in

---

the employment position that such individual holds or desires." *Id*. § 12102(8). The court will assume that Pridgen is a "qualified individual" because he was hired by the Bureau of Highways.

[16] An individual with a disability is one who has (1) a physical or mental impairment that substantially limits one or more of his "major life activities"; (2) a record of such impairment; or (3) been perceived to have a physical or mental impairment. 42 U.S.C.A. §§ 12102(1) & (3)(A). Some examples of major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). To determine whether poor eyesight substantially limits a major life activity, the Court must consider "[t]he ameliorative effects of the mitigating measures of ordinary eyeglasses or contact lenses." *Id*. § 12102(4)(E)(ii).

the previous four years, and (2) he was fired.  *See* Def.'s Mot. Exs. 3 & 5.[17]

Pridgen has not shown that he was meeting the Bureau of Highways legitimate expectations at the time of his termination.[18]  Nor has Pridgen shown that his termination raises an inference of discrimination based on his partial blindness.[19]  As there is no evidence of disability discrimination, the Defendants are entitled to summary judgment on Pridgen's ADA claims.

---

[17]  Under the ADA Amendments Act of 2008, a person who has lost sight in one eye but retains full use of his other eye is "disabled."  Disability is to be construed "in favor of broad coverage . . . to the maximum extent permitted" by the ADA.  42 U.S.C.A. § 12102(4)(A).  "The term 'substantially limits' shall be interpreted consistently with the ADA Amendments Act of 2008."  *Id*. § 12102(4)(B).  Pridgen's other "past injuries" and the brief explanations of those injuries in his Workers' Compensation Records are insufficient to show disability under the ADA because the severity, duration, and lasting effects of these injuries are unknown. *See* Def.'s Mot. Ex. 5.

[18]  In unsworn documents, Pridgen has alleged that "there was no misconduct . . . to warrant [d]ischarge from employment, no drunkenness, no the[ft]."  Pl.'s Mot. Summ. J. 2.  This is insufficient.

[19]  Pridgen's complaint alleges only that "[s]taff at Shop #6 conspired to terminate me on basis of my disability."  Am. Compl. 3.  Although several documents show Pridgen's monocular vision, there is no evidence of discrimination against him based on that condition.

C.   Pridgen's Motion to Appoint Counsel & Order Depositions[20]

Pridgen has requested that the Court appoint counsel to assist him. Paper No. 32. A court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). If a *pro se* litigant "has a colorable claim but lacks the capacity to present it," the Court may appoint counsel. *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds*, *Mallard v. U.S. Dist. Court for Southern Dist. of Iowa*, 490 U.S. 296 (1989). Appointment "hinges on the characteristics of the claim and the litigant." *Whisenant*, 739 F.2d at 163. A court should appoint counsel only "whe[n] an indigent claimant presents exceptional circum- stances." *Holtzman v. Shearin*, No. 07-1473, 2007 WL 5170952, at *1 (D. Md. Aug. 8, 2007) (*citing Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975)).

As summary judgment will be granted for the Defendants, Pridgen's request to appoint counsel is moot and will be denied.

---

[20]   Paper No. 32 at 3 & Paper No. 48 at 2.

D.  Pridgen's Motion for a Continuance and to Order Depositions

Pridgen has requested a continuance and court-ordered depositions of Baltimore County witnesses.  Pridgen was previously granted a continuance to depose these witnesses.[21]  He has since moved for summary judgment.  The Court will deny his motion for a continuance.  Pridgen's request that this Court order depositions is moot and will be denied.

III. Conclusion

For the reasons stated above, Pridgen's motions for summary judgment, to appoint counsel, to order depositions, and for a continuance will be denied, and the Defendants' motion for summary judgment will be granted.


December 1, 2009                             _____/s/_____
Date                                         William D. Quarles, Jr.
                                             United States District Judge

---

[21]  Pridgen contacted and partially paid Patterson & Associates, LLC, but he did not provide the full amount requested before the depositions.  Paper No. 42 Ex. 1.  Thus, Roland Patterson refused to represent him, and Pridgen cancelled the depositions scheduled for July 17, 2009.  Paper No. 48 at 1; Paper No. 46 at Ex. 1.

15